# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

My Passport Portable Hard Drive, Serial number WX42D141D8R8, Currently located at: 600 Arch Street, Philadelphia, Pennsylvania 19106

)
)
)
)
)
)

Case No. 25-MJ-262

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A, INCORPORATED BY REFERENCE.

located in the _____ EASTERN _____ District of _____ PENNSYLVANIA _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, INCORPORATED BY REFERENCE

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing Aliens without authorization to the United States |

The application is based on these facts:

See attached affidavit of probable cause and corresponding Attachment C.

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Scott Baber

*Applicant's  signature*

SCOTT BABER, SPECIAL AGENT F.B.I.

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ TELEPHONE _____ *(specify reliable electronic means)*.

Date: _____

/s/ Craig M. Straw 2-5-2025

*Judge's signature*

City and state:  PHILADELPHIA, PENNSYLVANIA

CRAIG M. STRAW, U.S. MAGISTRATE JUDGE

*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❒ Original     ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>My Passport Portable Hard Drive, Serial number<br>WX42D141D8R8, Currently located at:<br>600 Arch Street, Philadelphia, Pennsylvania 19106 | )<br>)<br>)   Case No.  25-MJ-262<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Pennsylvania_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____February 19, 2025_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____on duty magistrate_____ .

*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____February 5, 2025 at 12:07pm_____         _____/s/Craig M. Straw_____

*Judge's signature*

City and state:   _____Philadelphia, Pennsylvania_____         CRAIG M. STRAW, U.S. MAGISTRATE JUDGE

*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  25-MJ-262 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF
My Passport Portable Hard Drive, Serial
number WX42D141D8R8, CURRENTLY
LOCATED AT 600 Arch Street, Philadelphia,
Pennsylvania 19106

Case No. _25-MJ-262_

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, **Scott Baber,** Special Agent of the Federal Bureau of Investigation, being first duly

sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such, I

am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly

authorized by the Attorney General to request a search warrant. I have been a Special Agent since

in or about January 2007. I am currently assigned to the FBI's Organized Crime Task Force in

Philadelphia, where I participate in investigations involving organized crime, fraud and violent

crime. In these investigations, I conduct or participate in surveillance, execute search warrants,

including on electronic devices, debrief informants, and review recorded conversations. I have

received training regarding the use of electronic evidence, including cellphones, in investigations involving financial crimes and acts of violence. I have participated in the execution of numerous search warrants involving electronic evidence.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      The property to be searched is a My Passport Portable Hard Drive, Serial number WX42D141D8R8, hereinafter the "Device."  The Device is currently located at Philadelphia FBI Field Office located at 600 Arch Street, Philadelphia, Pennsylvania, 19106.

4.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### SUBJECT OFFENSE

5.      For the reasons detailed below, there is probable cause to believe that the Device contains evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324, Bringing Aliens without authorization to the United States, the "Subject Offense."

### PROBABLE CAUSE

6.      On December 17, 2024, your affiant applied for a search warrant from the Southern District of Ohio for five cellular phones in Case No. 1:24-mj-996.  The five phones authorized to be searched in that warrant include: (1) a Redmi 9A M2006C3LG -Serial Number LRGMJRV8OR6HUG7P -IMEI 860500063884843; (2) a Galaxy S20+ 5G SM-G986U - Serial Number R5CN30BDYQD -IMEI 355525110826077; (3) a Redmi Note 9 M2003J15SC -Serial Number 1f8d8e6a0408; (4) an iPhone 11 Pro Max -Serial Number G6TCC9H5N70F -IMEI 353892109129935; and (5) an iPhone 14 Pro Max -Serial Number KD62DCR3WN -IMEI 358497899010710 (collectively, "the Five Cell Phones").  The same day, United States

2

Magistrate Judge Karen Litkovitz of the Southern District of Ohio authorized the FBI to search the contents of the Five Cell Phones.

7.      As noted in the Affidavit for the warrant application to search the Five Cell Phones, since approximately September of 2023, the Philadelphia Field Office of the FBI has been investigating KOBILJON MAKHMUDOV, BAKHROMJON ISROILOV (hereafter "BAKHROMJON"), BAKHODIR ISROILOV (hereafter "BAKHODIR"), NODIR ZIKRILLAEV, and UMIDA FOZILOVA and others unknown (the "Target Subjects") for conspiring to smuggle aliens from Central Asia into the United States and to kidnap aliens, if necessary, if the aliens have not fully satisfied their debt to the smugglers.  Based on my training, experience and involvement in this investigation, including my review of financial account statements and law enforcement reports as well as interviews I have conducted, I believe the Target Subjects, led by MAKHMUDOV, are involved in a large-scale, international alien smuggling operation.

8.      MAKHMUDOV's Alien Smuggling Organization was discovered after the Blue Ash Ohio Police Department (BAPD) responded to a kidnapping on September 21, 2023.[1]  As part of their investigation, on September 22, 2023, BAPD obtained a search warrant for the contents of the Five Cell Phones, which were recovered from 7048 Waterview Way, #47, West Chester, Township, OH.  To execute its search of the Five Cell Phones, BAPD sought and

---

[1] Hamilton County Ohio has been pursuing kidnapping related charges against the subjects involved in the kidnapping event.  Since the case has been pending, Fozilova, Makhmudov and Bakhodir have pled guilty and finished their sentences.  Fozilova is currently residing in Ohio.  Makhmudov and Bakhodir are currently in the custody of U.S. Immigration and Customs Enforcement in Ohio and are awaiting deportation proceedings. Bakhromjon and Zikrillaev remain in Hamilton County, Ohio jail awaiting trial on kidnapping-related charges.

obtained technical assistance from Homeland Security Investigations ("HSI").  After successfully extracting the contents of the Five Cell Phones, HSI provided a copy of their contents on a hard drive to FBI Philadelphia in or about January 2024 so that FBI could assist BAPD with their investigation.  However, this hard drive malfunctioned, and agents were not able to review the contents.

9.     On December 19, 2024, HSI provided the FBI with the Device, which contained a new copy of the content from HSI's extraction of the Five Cell Phones searched pursuant to the BAPD search warrant.  No member of the FBI case team has reviewed the contents of the Device.

10.     On December 26, 2024, the FBI initiated the search of the Five Cell Phones pursuant to the federal warrant 23-MJ-996.  However, the phones were password protected and required additional technical expertise to examine them.  On January 14, 2025, the Five Cell Phones were transferred to the custody of the Regional Computer Forensic Laboratory to be reviewed by a member of the FBI's Computer Analysis Response Team ("CART").  On January 15, 2025, CART reviewed the phones and advised that because they had been previously powered off, a subsequent search of the phones would likely take months or possibly years due to the security software on some of them.  Moreover, CART advised that because the phones had already been searched, no additional meaningful data would be gleaned from a second search of them.  Also on January 15, 2025, CART reviewed the Device and determined that it contained full extractions of all five phones conducted by HSI.  CART further noted that HSI's extractions of the Five Cell Phones were performed in an "after first unlock" status, and currently the phones were in a "before first unlock" status.  As a technical result of this status change, as explained by

4

CART, any subsequent search of these phones will produce less and repetitive information compared to the extraction from HSI's search on the Device.

11.      As such, the U.S. District Court for the Southern District of Ohio has previously authorized the search of the Five Cell Phones in warrant 24-mj-994. The Device, which contains HSI's results from searching the Five Cell Phones, is currently in the lawful possession of the FBI as described above. The FBI now seeks a warrant to search the Device for the same evidence of the Subject Offense as authorized in warrant 24-mj-994 for the Five Cell Phones, which is further described in Attachment B. While the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

12.      The Device is currently in storage at 600 Arch Street, Philadelphia, Pennsylvania. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

13.      Based on my training and experience, I use the following technical terms to convey the following meanings: "Digital storage media," as used herein, means any information storage device in which information is preserved in binary form and includes electrical, optical, and magnetic digital storage devices. Examples of digital storage media include, but are not limited to, compact disks, digital versatile disks ("DVDs"), USB flash drives, flash memory cards, and internal and external hard drives.

14.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as digital storage media.  Additionally, I know that the contents included in the DEVICE are extractions of five cell phones.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

16.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **INCORPORATION**

18.     Respectfully, I incorporate herein the information in the Affidavit for Search Warrant 1:24-mj-966, attached as Attachment C, to include, but not limited to, facts establishing probable cause, information related to cell phones, procedures for searching ESI and additional information regarding electronic storage and forensic analysis as it relates to searching cell phones and cell phone extractions.

## **CONCLUSION**

19.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*/s/ Scott Baber*

Scott Baber
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on February 5, 2025, Philadelphia, Pennsylvania.

*/s/Craig M. Straw 2-5-2025*

CRAIG M. STRAW
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a My Passport Portable Hard Drive, Serial number WX42D141D8R8, hereinafter the "Device."  The Device is currently located at Philadelphia FBI Field Office located at 600 Arch Street, Philadelphia, Pennsylvania, 19106.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### I.  Particular Things to be Searched and Seized

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on each Device for evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324 (Bringing Aliens to the U.S.) described as follows for the period **of January 1, 2023 to present**:

    a.  Evidence of the Subject Offense;

    b.  Evidence concerning the identity or location of the owner(s) or user(s) of the Device;

    c.  Evidence of the identity of and relationships between co-conspirators and/or aliens involved in the Subject Offense, including, for example, communications with co-conspirators, aliens, customers, and other participants in the Subject Offense; photographs or other attachments; and address book information;

    d.  Evidence concerning the solicitation, location, movement, and use of funds related to and assets derived from the Subject Offense, including but not limited to bank statements, account information, real property deeds, and documents regarding corporate formation;

    e.  Evidence of the existence of financial accounts used in the Subject Offense and the identity of the accountholders;

    f.  Evidence of purchases in furtherance of the Subject Offense, including but not limited to airline tickets;

    g.  Evidence concerning efforts to conceal the movement or location of assets derived from the Subject Offense;

    h.  Evidence concerning the location of other evidence of the Subject Offense, including but not limited to email or other social media accounts potentially containing relevant evidence; and

    i.  Passwords or other information needed to access user's accounts.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant.  Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Section II of this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from the Device if necessary to evaluate its contents and to locate all data responsive to the warrant.

**ATTACHMENT C**

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>THE FIVE SUBJECT DEVICES CURRENTLY LOCATED AT BLUE<br>ASH POLICE DEPARTMENT, 4343 COOPER RD, CINCINNATI,<br>OH 45242 | )<br>)<br>)<br>)<br>)<br>)    Case No.   1:24-mj-996 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____SOUTHERN_____ District of _____OHIO_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before ___12/31/2024___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Karen L. Litkovitz_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    12/17/2024 @ 6:34 p.m.                    *Karen L. Litkovitz*
                                                                                    *Judge's signature*

City and state:   Cininnati, Ohio                          Hon. Karen L. Litkovitz, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Attachment B**

## II.  Particular Things to be Searched and Seized

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on each Subject Device for evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324 (Bringing Aliens Without Authorization to the United States) described as follows for the period **of January 1, 2023 to present**:

    a.  Evidence of the Subject Offense, including all communications content, including email, text (short message service (SMS)/multimedia message service (MMS) or application chats), notes, and voicemail. This data will also include attachments, source and destination addresses, and time and date information, connection logs, images and any other messages, including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession or control of such communications or information found;

    b.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device, including all location data and metadata;

    c.  Evidence of the identity of and relationships between co-conspirators and/or aliens involved in the Subject Offense, including, for example, communications with co-conspirators, aliens, customers, and other

participants in the Subject Offense; photographs or other attachments; and address book information;

d.  Evidence concerning the solicitation, location, movement, and use of funds related to and assets derived from the Subject Offense, including but not limited to bank statements, account information, real property deeds, and documents regarding corporate formation;

e.  Evidence of the existence of financial accounts used in the Subject Offense and the identity of the accountholders;

f.  Evidence of purchases in furtherance of the Subject Offense, including but not limited to airline tickets;

g.  Evidence concerning efforts to conceal the movement or location of assets derived from the Subject Offense;

h.  Evidence of efforts to conceal or obstruct;

i.  Evidence of false statements in connection with the investigation;

j.  Evidence concerning the location of other evidence of the Subject Offense, including but not limited to email or other social media accounts potentially containing relevant evidence;

k.  Passwords or other information needed to access user's accounts;

l.  Evidence of user attribution showing who used or owned the Subject Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, saved usernames and passwords, metadata, documents, browsing history, device identification and settings data, address books/contacts, social network posts/updates/tags,

3

**Attachment A**

**I.  Property Subject to Search and Seizure**

The property to be searched is the five Subject Devices, further identified below,

currently located at Blue Ash Police Department, 4343 Cooper Rd., Cincinnati, OH 45242:

1.      Subject Device #1 – to wit, a Redmi 9A M2006C3LG -Serial Number

LRGMJRV8OR6HUG7P -IMEI 860500063884843.

2.      Subject Device #2 – to wit, a Galaxy S20+ 5G SM-G986U - Serial Number

R5CN30BDYQD -IMEI 355525110826077.

3.      Subject Device #3 – to wit, a Redmi Note 9 M2003J15SC -Serial Number

1f8d8e6a0408.

4.      Subject Device #4 – to wit, an iPhone 11 Pro Max -Serial Number

G6TCC9H5N70F -IMEI 353892109129935.

5.      Subject Device #5 – to wit, an iPhone 14 Pro Max -Serial Number

KD62DCR3WN -IMEI 358497899010710.

This warrant authorizes the forensic examination of the Subject Devices for the purpose

of identifying the electronically stored information described in Attachment B:

Wi-Fi network tables, associated wireless devices (such as known wi-fi

networks and Bluetooth devices), associated connected devices (such as

for backup and syncing), photographs, videos, and user dictionaries.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant. Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Section II of this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from the Subject Device if necessary to evaluate its contents and to locate all data responsive to the warrant.

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE FIVE SUBJECT DEVICES CURRENTLY LOCATED AT BLUE<br>ASH POLICE DEPARTMENT, 4343 COOPER RD, CINCINNATI, OH<br>45242 | )<br>)<br>)<br>)<br>)<br>)    Case No.   1:24-mj-996 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the     SOUTHERN     District of     OHIO     , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Bringing Aliens Without Authorization to the United States |

The application is based on these facts:

See Affidavit

- ☑ Continued on the attached sheet.
- ❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Scott Baber, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**via FaceTime video** _____ *(specify reliable electronic means)*.

Date: **Dec 17, 2024** _____

_____
Karen L. Litkovitz
**United States Magistrate Judge**

City and state:   Cininnati, Ohio

**Attachment B**

## II.  Particular Things to be Searched and Seized

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on each Subject Device for evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324 (Bringing Aliens Without Authorization to the United States) described as follows for the period **of January 1, 2023 to present**:

    a.  Evidence of the Subject Offense, including all communications content, including email, text (short message service (SMS)/multimedia message service (MMS) or application chats), notes, and voicemail. This data will also include attachments, source and destination addresses, and time and date information, connection logs, images and any other messages, including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession or control of such communications or information found;

    b.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device, including all location data and metadata;

    c.  Evidence of the identity of and relationships between co-conspirators and/or aliens involved in the Subject Offense, including, for example, communications with co-conspirators, aliens, customers, and other

    participants in the Subject Offense; photographs or other attachments; and address book information;

d.   Evidence concerning the solicitation, location, movement, and use of funds related to and assets derived from the Subject Offense, including but not limited to bank statements, account information, real property deeds, and documents regarding corporate formation;

e.   Evidence of the existence of financial accounts used in the Subject Offense and the identity of the accountholders;

f.   Evidence of purchases in furtherance of the Subject Offense, including but not limited to airline tickets;

g.   Evidence concerning efforts to conceal the movement or location of assets derived from the Subject Offense;

h.   Evidence of efforts to conceal or obstruct;

i.   Evidence of false statements in connection with the investigation;

j.   Evidence concerning the location of other evidence of the Subject Offense, including but not limited to email or other social media accounts potentially containing relevant evidence;

k.   Passwords or other information needed to access user's accounts;

l.   Evidence of user attribution showing who used or owned the Subject Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, saved usernames and passwords, metadata, documents, browsing history, device identification and settings data, address books/contacts, social network posts/updates/tags,

**Attachment A**

**I.  Property Subject to Search and Seizure**

The property to be searched is the five Subject Devices, further identified below,

currently located at Blue Ash Police Department, 4343 Cooper Rd., Cincinnati, OH 45242:

1.       Subject Device #1 – to wit, a Redmi 9A M2006C3LG -Serial Number

LRGMJRV8OR6HUG7P -IMEI 860500063884843.

2.       Subject Device #2 – to wit, a Galaxy S20+ 5G SM-G986U - Serial Number

R5CN30BDYQD -IMEI 355525110826077.

3.       Subject Device #3 – to wit, a Redmi Note 9 M2003J15SC -Serial Number

1f8d8e6a0408.

4.       Subject Device #4 – to wit, an iPhone 11 Pro Max -Serial Number

G6TCC9H5N70F -IMEI 353892109129935.

5.       Subject Device #5 – to wit, an iPhone 14 Pro Max -Serial Number

KD62DCR3WN -IMEI 358497899010710.

This warrant authorizes the forensic examination of the Subject Devices for the purpose

of identifying the electronically stored information described in Attachment B:

Wi-Fi network tables, associated wireless devices (such as known wi-fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), photographs, videos, and user dictionaries.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant. Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Section II of this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from the Subject Device if necessary to evaluate its contents and to locate all data responsive to the warrant.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH AND SEIZURE WARRANT FOR THE FIVE SUBJECT DEVICES CURRENTLY LOCATED AT BLUE ASH POLICE DEPARTMENT, 4343 COOPER RD, CINCINNATI, OH 45242 | **Case No.** 1:24-mj-996<br><br>**Filed Under Seal** |

<u>**Agent Affidavit in Support of an Application for a Search Warrant**</u>

I, Scott Baber, Special Agent of the Federal Bureau of Investigation, being duly sworn, deposes and says:

**I.  Introduction**

**A.  Affiant**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent since in or about January 2007. I am currently assigned to the FBI's Organized Crime Task Force in Philadelphia, where I participate in investigations involving organized crime, fraud, and violent crime. In these investigations, I conduct or participate in surveillance, execute search warrants, including on electronic devices, debrief informants, and review recorded conversations. I have received training regarding the use of electronic evidence, including cellphones, in investigations involving financial crimes and acts of violence. I have participated in the execution of numerous search warrants involving electronic evidence.

2.      I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the items and information described in Attachment A for evidence of the subject Offense cited herein, as further described in Attachment B. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B.  The Subject Devices**

3.      The five Subject Devices (each, generally, a "Subject Device") are particularly described as electronic devices, specifically cellular telephones, seized by and in the possession of the Blue Ash, Ohio Police Department, located at 4343 Cooper Rd., Cincinnati, OH 45242.

4.      Based on my training and experience, I have reason to believe that each of the Subject Devices have capabilities including serving as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant.

5.      Subject Device #1 – to wit, a Redmi 9A M2006C3LG -Serial Number LRGMJRV8OR6HUG7P -IMEI 860500063884843.

6.      Subject Device #2 – to wit, a Galaxy S20+ 5G SM-G986U - Serial Number R5CN30BDYQD -IMEI 355525110826077.

7.      Subject Device #3 – to wit, a Redmi Note 9 M2003J15SC -Serial Number 1f8d8e6a0408.

8.      Subject Device #4 – to wit, an iPhone 11 Pro Max -Serial Number G6TCC9H5N70F -IMEI 353892109129935.

9.      Subject Device #5 – to wit, an iPhone 14 Pro Max -Serial Number KD62DCR3WN -IMEI 358497899010710.

10.     Further, based on my training and experience, I know that an extraction report allows data that had been on an electronic device (e.g. a cellphone) such as Subject Devices to be reviewed on a platform other than the original electronic device. Such review may take place on a personal computer, where a reviewer can observe images, video, audio, text files, contacts, SIM card information, device registration and identification information, location information and file metadata, among other ESI, that had been stored on the device from which the data was extracted.

## C. The Subject Offense

11.     For the reasons detailed below, there is probable cause to believe that the Subject Devices contain evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324, Bringing Aliens Without Authorization to the United States, (hereinafter, the "Subject Offense").

## II. Probable Cause

### A. Probable Cause Regarding the Subject Offense

12.     Since approximately September of 2023, the Philadelphia Field Office of the FBI has been investigating KOBILJON MAKHMUDOV, BAKHROMJON ISROILOV (hereafter "BAKHROMJON"), BAKHODIR ISROILOV (hereafter "BAKHODIR"), NODIR ZIKRILLAEV, and UMIDA FOZILOVA and others unknown (the "Target Subjects") for conspiring to smuggle aliens from Central Asia into the United States and to kidnap aliens, if necessary, if the aliens have not fully satisfied their debt to the smugglers.

3

13.     Based on my training, experience and involvement in this investigation, including my review of financial account statements and law enforcement reports as well as interviews I have conducted, I believe the Target Subjects, led by MAKHMUDOV, are involved in a large-scale, international alien smuggling operation.

Background of the Investigation

14.     MAKHMUDOV's Alien Smuggling Organization was discovered after the Blue Ash Ohio Police Department (BAPD) responded to a kidnapping.  On September 21, 2023, the BAPD responded to a 911 call of a kidnapping in the parking lot of the Extended Stay America hotel in Blue Ash, OH.  Upon arrival at the parking lot, officers interviewed a man who said that his friend, MIRJALOL ESHPULATOV, an Uzbek national, had arranged to meet a woman, later discovered to be FOZILOVA, there.  The man and ESPHULATOV arrived together in a car. When ESPHULATOV got out of a car to meet FOZILOVA, several men, later determined to be ZIKRILLAEV, BAKHROMJON, and BAKHODIR, emerged from a minivan, later determined to be driven by MAKHMUDOV; grabbed ESPHULATOV; forced him into the back of the van; and quickly drove away.

15.     Later that day, BAPD ultimately discovered EPSHULATOV held captive and beaten by four Uzbek nationals at 7048 Waterview Way #47, West Chester Township, OH.  BAPD officers then detained four of the Target Subjects in the apartment, MAKHMUDOV, BAKHORMJONN, BAKHODIR and FOZILOVA.[1]  At the time of their arrest, BAPD officers advised all of the apartment occupants to leave their phones and belongings inside the apartment. The following day, September 22, 2023, BAPD obtained a search warrant for the residence, where

---

[1] A fifth person, unidentified in reporting about the event, was also in the apartment.  The victim did not identify this unidentified person as being involved in the kidnapping offense, and this unidentified person was not charged in offenses related to the kidnapping.

they recovered the Subject Devices and other evidence of the kidnapping.  All four TARGET SUBJECTS were charged in Hamilton County, OH with kidnapping related offenses. ZIKRILLAVEV, also an Uzbek national, was later indicted on kidnapping related charges and was eventually arrested in New York City before being extradited to Hamilton County, OH.[2]  BAPD has retained custody of the Subject Devices and other evidence pending the trial.

ESPHULATOV Use of MUHMUDOV's Alien Smuggling Organization

16.     During interviews with BAPD and the FBI, ESPHULATOV told law enforcement that he used MAHMUDOV's smuggling network to travel from Uzbekistan to the United States and the kidnapping was the result of a disputed outstanding $6,000 debt related to MAHMUDOV's smuggling services.  In approximately June 2023, ESPHULATOV decided to flee his native Uzbekistan.   An acquaintance and one of MAHMUDOV's associates, SHOKHURKH QOSIMOV, initially handled ESPHULATOV's travel arrangements.  ESPHULATOV agreed to pay MAHMUDOV's alien smuggling organization $12,000 to get to the United States, and he paid QOSIMOV the first $1,000 installment.  QOSIMOV made arrangements for ESPHULATOV to fly from Samarkand, Uzbekistan to Istanbul, Turkey.

17.     Once in Istanbul, ESPHULATOV contacted MAHMUDOV, who was in the United States, by phone and spoke with him directly for the first time.  MAKHMUDOV arranged for two other associates to meet ESPHULATOV at the airport in Istanbul, where they took his photo and gave him papers and a ticket to fly to Madrid, Spain.  ESPHULATOV also agreed to pay

---

[2] Since the Hamilton County case has been pending, both BAKHODIR and FOZILOVA have pled guilty to one count of Attempted Kidnapping, finished their sentences and have been released.  The remaining three defendants, BAKHROMJON, MAKHMUDOV, and ZIKRILLAEV, remain in custody pending trial currently scheduled for January 6, 2025. As discussed further below, FOZILOVA has cooperated with the government and is expected to continue doing so in exchange for immigration benefits.

MAHMUDOV the next fee installment of $5,000. ESPHULATOV's family made the payment to MAKHMUDOV via QOSIMOV in Uzbekistan. However, once at the Madrid airport, MAKHUDOV stopped answering ESPHULATOV's calls, and ESPHULTOV ultimately purchased his own plane ticket to Nicaragua to continue traveling to the United States.

18.    Upon arriving in Nicaragua, ESPHULATOV re-established contact with MAKHMUDOV, who assured him that his smuggling network could still help him get to the United States. MAKHMUDOV had ESPHULATOV send him a photo of himself. Shortly after, one of MAKMUDOV's associates met ESPHULATOV at the hotel where he was staying and showed him his photo. Individuals in the network then assisted ESPHULATOV move from Nicaragua to Guatemala to Mexico and then from Mexico's southern border to its northern border with the U.S. While near the U.S. border, ESPHULATOV was told he could enter the U.S. either by using "CBP One" or pay to cross the border. ESPHULATOV decided to pay. Two days later ESPHULATOV, without prior approval, walked across the U.S. border with other aliens, who also entered the U.S. without prior approval. ESPHULATOV then surrendered to U.S. border officials.

19.    After spending several days in detention, ESPHULATOV was released and joined his uncle living in Columbus, Ohio on approximately September 7, 2023. Around this time, MAKHUDOV contacted ESPHULTATOV and demanded the outstanding $6,000 for the cost of smuggling ESPULTATOV to the U.S. When ESPHULTAV disputed he owed the money – largely due to MAKHUDOV's unavailability and ESHPULTAV's out-of-pocket expenses – MUKUDOV set up the scheme to kidnap ESPULTATOV and hold him for ransom until he received payment. In particular, the investigation revealed that, MUKHUDOV directed FOZILOVA to communicate with ESHPULTAV, who was unknown to her, through a fictitious Instagram account. FOZILOVA directed ESHPULTAV to meet her at the hotel, where other

Target Subjects forced him into the van and brought him to the apartment. While ESHPULTAV was held hostage, MAKHMUDOV acted as the "boss" and gave orders to the other Target Subjects. MAKHMUDOV demanded the full payment for smuggling ESPHULATOV to the U.S. while BAKROMJON and BAKHODIR tied up and assaulted ESPHULATOV in the apartment. Additionally, the Target Subjects recorded a video of a bound and beaten ESPHULATOV using one of the Subject Devices. ESHPULATOV also heard the Target Subject talk about showing a video of him to other individuals who owed the smuggling network money to get them to pay.

20.     ESPHULATOV further explained that he personally knew of at least three other individuals who used MAKHMUDOV's smuggling network to travel from Uzbekistan to the U.S., also entering without prior approval. Moreover, ESPHULATOV further advised that he had to change his phone number after MAKHMUDOV's arrest. Too many Uzbeks using MUKHMUDOV's smuggling network contacted him to "withdraw his report" against MAKHMUDOV as they were stranded in Turkey since his arrest. ESPHULATOV believes MAKHMUDOV called his family in Uzbekistan, blamed ESPHULATOV for his imprisonment, and gave ESPHULATOV's phone number to them.

21.     ESPHULATOV additionally identified MAKHMUDOV, FOZILOVA, BAKHODIR and BAKHROMJON in photo arrays as the individuals involved in his kidnapping. He had previously recognized MAKHMUDOV at the time of the kidnapping having seen photos of MAKHMUDOV on social media.

FOZILOVA's Knowledge of MAKMUDOV's Alien Smuggling Organization

22.     During a series of interviews with the FBI, pursuant to a proffer agreement, FOZILOVA discussed her background, involvement in ESPHULATOV's kidnapping and information related to MAKHMUDOV's alien smuggling activities. FOZILOVA lawfully arrived

in the U.S. as a green card holder in 2016. In the summer of 2023, she moved to 7048 Waterview Way #47, West Chester Township, OH, the apartment where ESHPULATOV was subsequently taken in the kidnapping and found by BAPD the following September. While there, she and her young child lived with several other Uzbek nationals for various periods of time, including MAKHMUDOV, BAHKROMJO, BAKHROM, NILUFAR MADJIDOVA, "MAFTUNA," and at least one other person. Other than FOZILOVA and her child, all of the Uzbek nationals living in the apartment entered the U.S. illegally. BAHKROMJOHN, MADJIDOVA and MAFTUNA all ultimately confided to FAZILOVA that MAKMUDOV smuggled them into the United States. MADJOJOVA and MAFTUNA both further explained that MAKMUDOV had charged them each between $13,000-$15,000 for the smuggling services. BAHKROMJON and MADJIDOVA both further explained that they had only paid half of their required amount to come to the US, so they reached an agreement with MAKMUDOV to work in the US and pay him the rest from their income.

23.    While living with MAKHMUDOV, FOZILOVA became further aware of MAKHMUDOV's smuggling activities through various observations. At one point, FOZILOVA overheard MAKHMUDOV on the telephone arguing with "UMID," his "boss," discussing a scheme to smuggle people into the U.S. from Mexico. Furthermore, MAKMUDOV told her that he owed money to UMID for smuggling MAKHMUDOV into the country and, to satisfy this debt, he had agreed to assist UMID smuggle migrants into the country from Mexico. On another occasion, FOZILOVA overheard MAKHMUDOV threaten an unknown woman on the phone and demand that she pay him $5,000 for smuggling her into the U.S. FOZILOVA often used one of MAKHMUDOV's phones and once saw a message for MAKHMUDOV, stating "Your people have arrived in Mexico." Another time, she received a call from "ULEGBEK," whom

MAKMUDOV explained "handled the money" for the Alien Smuggling Operation. ULEGBEK stated on the call that MAKMUDOV's "guys" were in Mexico and MAKHMUDOV needed to send ULUGBEK money. FOZILOVA then assisted MAKMUDOV send $800 to ULEGEK through her Zelle account.

24.      Additionally, although initially coordinated without her knowledge, FOZILOVA eventually learned that her brother used MAKMUDOV's smuggling network to attempt to enter the United States. At one-point MAKMUDOV asked her for money to buy airline tickets for two individuals, one of whom she learned was her brother, who were stuck in Istanbul, Turkey. Her brother later told her that MAKMUDOV charged him and the other person $13,000 each to get to the United States. She then gave MAKHUDOV $5,000 to buy a ticket for her brother and the other individual to go back to Uzbekistan; instead, she learned, MAKHUDOV used it to buy tickets for other travelers already in Mexico.

25.      FOZIVOLA explained that MAKMUDOV had two cell phones. One was an iPhone, and the other was a Samsung. She only used his iPhone when they traded phones. FOZIVOLA further identified MAKMUDOV, BAKHROM and BAKHODIR in confirmatory photographs presented to her without any identifying information.

26.      Based on the preceding, I believe that the Target Subjects, and others still unidentified including UMID, conspired to unlawfully bring aliens to the U.S. in violation of the Subject Offense. Furthermore, I believe the Target Subjects have collaborated with smugglers in other countries, including Mexico, via the Subject Devices to illegally transport migrants to the U.S. Finally, I believe the Target Subjects used the Subject Devices to facilitate acts of violence to ensure debts were paid in furtherance of the Subject Offense.

27.     Based on my experience, training, and familiarity with cellular telephones and laptops, I am aware of the following:

a.     Cellular telephones frequently have telephone directory features, as well as methods to learn the call number associated with each cellular telephone, such as caller-identification features. Cellular telephones also typically contain records of recent call activity, both incoming and outgoing calls, and lists of stored telephone numbers and other identifying information, such as names. Cellular telephone users often maintain lists, such as address books or contact information that are stored on the cellular telephone or its SIM card.

b.     Cellular telephones typically have voicemail or voice-mailbox features that allow callers to leave voice and/or alphanumeric messages if the cellular telephone user does not answer. Voicemail is typically stored on the computer network of the provider of the cellular telephone's telephone service, which network is external to the cellular telephone, but may also be stored on the cellular telephone itself.

c.     Cellular telephones and other portable electronic devices such as tablet computers typically have messaging capabilities, including text, data, chat, digital photographs and video, MMS (i.e., multimedia messaging service), and SMS (i.e., short message service) messaging and email (collectively, "text messages"), that permit the device user to send and receive text messages, including messages with digital photographs and video attached. Text messages and any attachments are typically stored on the computer network of the provider of the mobile device's telephone service, which network is external to the mobile device, but may also be stored on the mobile device itself.

d.      Cellular telephones often have electronic calendar features that allow the user to schedule appointments and meetings. Cellular telephone users often use that feature to remind themselves of meetings and appointments with friends and confederates.

e.      Cellular telephones may offer capabilities such as sending and receiving email, and accessing and downloading information from the Internet.

f.      Cellular telephones may have applications installed, including social media and messaging applications that permit the user to communicate with contacts using these applications. Cellular telephones may also have notetaking and file organization applications installed, which, along with other applications, can store financial and personal identification data, including bank account numbers for fraudulent accounts, and records of illegal transactions.

g.      Cellular telephones with camera functions permit the cellular telephone user to take photographs and videos, which are stored on the cellular telephone itself.

h.      Cellular telephones may record location data that records where the user has carried or used the cellular telephone.

i.      The information described above usually remains accessible in the cellular telephones' memory even if the cellular telephones have lost all battery power and have not been used for an extended period.

28.      Based on my training, experience, and participation in this investigation, I believe that the Subject Devices will contain evidence, fruits, and/or instrumentalities of the Subject Offense, including: Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device; Evidence of the identity of and relationships between co-conspirators and/or aliens involved in the Subject Offense, including, for example, communications with co-conspirators, aliens, customers, and other participants in the Subject Offense; photographs or other attachments;

and address book information; Evidence concerning the solicitation, location, movement, and use of funds related to and assets derived from the Subject Offense, including but not limited to bank statements, account information, real property deeds, and documents regarding corporate formation; Evidence of the existence of financial accounts used in the Subject Offense and the identity of the accountholders; Evidence of purchases in furtherance of the Subject Offense, including but not limited to airline tickets; Evidence concerning efforts to conceal the movement or location of assets derived from the Subject Offense; Evidence concerning the location of other evidence of the Subject Offense, including but not limited to email or other social media accounts potentially containing relevant evidence; and Passwords or other information needed to access user's accounts.

29.    Based on the foregoing, I respectfully submit there is probable cause to believe that the Target Subjects have engaged in the Subject Offense, and that evidence of this criminal activity is likely to be found on the Subject Devices.

**III.  Procedures for Searching ESI**

30.    Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review ESI for information responsive to the warrant.

31.    Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant. Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Devices to locate all data responsive to the warrant.

## IV.  Additional Information Regarding Electronic Storage and Forensic Analysis

32.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  On computers, including laptop computers, virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

        33.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Devices to human inspection to determine whether it is evidence described by the warrant.

        34.     Based on the foregoing, I respectfully request the court to issue a warrant to seize and search the items and information as specified in Attachment A and Attachment B to this affidavit and to the Search and Seizure Warrant.

14

35.     Considering the confidential nature of the continuing investigation, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise.

36.     In accordance with 18 U.S.C. § 3103a(b), I further request delayed notification of the execution of the warrant for 30 days because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, notify confederates, and change patterns of behavior.


Scott Baber
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on this _____17_____ of December 17, 2024.


Karen L. Litkovitz
United States Magistrate Judge

15

**Attachment B**

## II.  Particular Things to be Searched and Seized

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on each Subject Device for evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324 (Bringing Aliens Without Authorization to the United States) described as follows for the period **of January 1, 2023 to present**:

a.  Evidence of the Subject Offense, including all communications content, including email, text (short message service (SMS)/multimedia message service (MMS) or application chats), notes, and voicemail. This data will also include attachments, source and destination addresses, and time and date information, connection logs, images and any other messages, including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession or control of such communications or information found;

b.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Device, including all location data and metadata;

c.  Evidence of the identity of and relationships between co-conspirators and/or aliens involved in the Subject Offense, including, for example, communications with co-conspirators, aliens, customers, and other

participants in the Subject Offense; photographs or other attachments; and address book information;

d.  Evidence concerning the solicitation, location, movement, and use of funds related to and assets derived from the Subject Offense, including but not limited to bank statements, account information, real property deeds, and documents regarding corporate formation;

e.  Evidence of the existence of financial accounts used in the Subject Offense and the identity of the accountholders;

f.  Evidence of purchases in furtherance of the Subject Offense, including but not limited to airline tickets;

g.  Evidence concerning efforts to conceal the movement or location of assets derived from the Subject Offense;

h.  Evidence of efforts to conceal or obstruct;

i.  Evidence of false statements in connection with the investigation;

j.  Evidence concerning the location of other evidence of the Subject Offense, including but not limited to email or other social media accounts potentially containing relevant evidence;

k.  Passwords or other information needed to access user's accounts;

l.  Evidence of user attribution showing who used or owned the Subject Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, saved usernames and passwords, metadata, documents, browsing history, device identification and settings data, address books/contacts, social network posts/updates/tags,

3

**Attachment A**

**I.  Property Subject to Search and Seizure**

The property to be searched is the five Subject Devices, further identified below, currently located at Blue Ash Police Department, 4343 Cooper Rd., Cincinnati, OH 45242:

1.      Subject Device #1 – to wit, a Redmi 9A M2006C3LG -Serial Number LRGMJRV8OR6HUG7P -IMEI 860500063884843.

2.      Subject Device #2 – to wit, a Galaxy S20+ 5G SM-G986U - Serial Number R5CN30BDYQD -IMEI 355525110826077.

3.      Subject Device #3 – to wit, a Redmi Note 9 M2003J15SC -Serial Number 1f8d8e6a0408.

4.      Subject Device #4 – to wit, an iPhone 11 Pro Max -Serial Number G6TCC9H5N70F -IMEI 353892109129935.

5.      Subject Device #5 – to wit, an iPhone 14 Pro Max -Serial Number KD62DCR3WN -IMEI 358497899010710.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B:

Wi-Fi network tables, associated wireless devices (such as known wi-fi

networks and Bluetooth devices), associated connected devices (such as

for backup and syncing), photographs, videos, and user dictionaries.

In conducting this review, law enforcement personnel may use various techniques to locate

information responsive to the warrant.  Law enforcement personnel will make reasonable efforts

to search only for files, documents, or other electronically stored information within the categories

identified in Section II of this Attachment. However, law enforcement personnel are authorized to

conduct a complete review of all the ESI from the Subject Device if necessary to evaluate its

contents and to locate all data responsive to the warrant.